**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| FIREANGEL SAFETY TECHNOLOGY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN HEIMAN TECHNOLOGY CO., LTD.,<br><br>Defendant. | Case No. 2:26-cv-01032<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff FireAngel Safety Technology Limited ("FireAngel" or "Plaintiff"), by and through its undersigned counsel, files this Complaint for patent infringement against Defendant Shenzhen Heiman Technology Co., Ltd. ("Heiman" or "Defendant") for infringing United States Patent No. 10,769,938 B1 (the "'938 Patent"), and alleges as follows:

**PARTIES**

1. Plaintiff FireAngel Safety Technology Limited is a company organized and existing under the laws of England and Wales, with its principal place of business at Ground Floor Bourn, 1 Manor House Drive, Coventry, United Kingdom, CV1 2TA.

2. On information and belief, Defendant Shenzhen Heiman Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China, with its principal place of business at 101 No. 4 Dafu Industrial Park, Kukeng Community, Guanlan Street, Longhua District, Shenzhen, Guangdong 518110, China. Heiman maintains a website at www.heimantech.com.

## JURISDICTION

3. This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has specific personal jurisdiction over Heiman under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and due process. On information and belief, Heiman has committed acts of infringement in violation of 35 U.S.C. § 271 in this District and has purposefully placed the Accused Products (defined below) into the stream of commerce with the knowledge and expectation that they will be purchased and used by consumers in Texas and in this District, and the Accused Products are in fact offered for sale, sold, and used in Texas and in this District, including through Amazon.com.

5. Heiman purposefully directs the Accused Products into established distribution channels within this District and the United States nationally. Heiman, through its business partners and agents such as Hongkong Brave Future Technology Limited and Amazon, makes deliberate decisions to market the Accused Products in Texas and this District and the United States overall. For example, Heiman, as a seller operating through distributors including Amazon, actively offers to sell, and sells and ships, products, or causes products to be shipped, to customers throughout the United States, including to Texas residents, and accepts payment in U.S. dollars and/or funds from U.S. bank accounts. Heiman has a “HEIMAN Store” on Amazon:




https://www.amazon.com/gp/product/B0G52H7YSZ/ref=ox_sc_act_title_1?smid=A26IY4UYAN1BGN&psc=1

6. Upon information and belief, using this "HEIMAN Store," Heiman controls and uses its business channels for placing the Accused Products into the stream of commerce in the United States market, including Texas:



https://www.amazon.com/stores/page/5B64DA7F-82CA-4AED-BB2A-C658B43FAE92?ingress=2&lp_context_asin=B0G52H7YSZ&visitId=e5d0361a-695a-4cfd-aca9-4441ee850163&store_ref=bl_ast_dp_brandlogo_sto&ref_=ast_bln

7. As shown, the Amazon webpage states that the Accused Products are sold by "Heiman US Official" on the platform and fulfilled by Amazon. When an item ships from Amazon, as opposed to a third-party seller, the item is fulfilled by Amazon.




8. The detailed seller information indicates that the business behind "Heiman US Official" is Hongkong Brave Future Technology Limited, as follows:


Heiman US Official
Visit the Heiman US Official storefront
★★★★★ | 100% positive in the last 12 months (34 ratings)
Please refer to the Amazon.com Return Policy .
Detailed Seller Information
Business Name: Hongkong Brave Future Technology Limited
Business Address:
四季花城荷花 苑2栋A座301
龙岗区五和大道南85号
深圳市
广东
518100
CN

https://www.amazon.com/sp?ie=UTF8&seller=A26IY4UYAN1BGN&asin=B0G52H7YSZ&ref_=dp_merchant_link&isAmazonFulfilled=1

9. Upon information and belief, the "Heiman US Official" storefront lists only Heiman products.

10. On information and belief, Hongkong Brave Future Technology Limited operates as an agent of Heiman and vicariously as part of the same business group to work in concert with Heiman. As shown, Hongkong Brave Future Technology Limited is "Heiman US Official." The product packaging of an Accused Product ordered through Amazon identifies "Shenzhen Heiman Technology Co., Ltd." as the manufacturer:




11. On information and belief, Hongkong Brave Future Technology Limited is an alter ego of Heiman. Upon information and belief, Hongkong Brave Future Technology Limited has two shareholders, who are spouses, that collectively hold 100% of the shares. Upon information and belief, the first shareholder is the Director of Hongkong Brave Future Technology Limited and General Manager and Director of Heiman. Upon information and belief, the second shareholder of Hongkong Brave Future Technology Limited is also the legal representative and Chairman of the Board of Directors of Heiman, and is an in-house product designer for Heiman. Upon information and belief, the two shareholders of Hongkong Brave Future Technology Limited hold more than 85% of the direct and indirect shareholdings of Heiman. Upon information and belief, Hongkong Brave Future Technology Limited was established solely for the purpose of sales operations on the Amazon U.S. platform. Upon information and belief, Heiman so dominates and controls the policies and business practices of Hongkong Brave Future Technology Limited,

including the conduct alleged herein, that these entities do not have a separate mind, will, or existence of its own, and each is a mere instrumentality and alter ego of the other.

12. Heiman has obtained an FCC grantee code 2AK7X, which is the first part of FCC ID on Heiman's own S1-series smoke alarms, further reflecting its deliberate decision to market the Accused Products in the United States, including in Texas and this District.

13. These activities give rise to FireAngel's patent infringement claims and have caused FireAngel injury in Texas and this District from such patent infringement. Heiman has derived substantial revenue from sales of Accused Products distributed in Texas and this District, along with international commerce. Heiman should fully expect that its actions have consequences in Texas and this District and has clear notice that it is subject to suit in Texas and this District.

14. In the alternative, this Court has personal jurisdiction over Heiman pursuant to Federal Rule of Civil Procedure 4(k)(2). FireAngel's patent infringement claim arises under federal law. In addition, Heiman is a foreign company organized under the laws of, and headquartered in, China. On information and belief, Heiman is not incorporated in, does not maintain its principal place of business in, and to the extent it refutes this Court's specific personal jurisdiction, is not "at home" in any state of the United States, and therefore is not subject to general jurisdiction in the courts of any single state. On information and belief, to the extent Heiman challenges this Court's specific personal jurisdiction, Heiman is also not subject to specific jurisdiction in the courts of any single state with respect to FireAngel's claims of patent infringement.

15. In addition, for Rule 4(k)(2), exercising jurisdiction over Heiman is consistent with the United States Constitution and laws. Heiman has purposefully directed its activities at the United States as a whole, and FireAngel's patent infringement claim arises out of and relates to

those activities. On information and belief, Heiman: (a) designs and manufactures the Accused Products for the United States market, including to comply with United States smoke-alarm standards such as Underwriters Laboratories Inc. (UL) (headquartered in Illinois) Standard 217; (b) sells and ships the Accused Products, under a FCC grantee code, to United States importers, distributors, and brand owners, knowing and intending that they will be imported into and sold throughout the United States; (c) offers for sale and sells Heiman-branded and manufactured Accused Products directed to United States consumers through Amazon.com via its agent Hongkong Brave Future Technology Limited; (d) supplies the Accused Products with English-language, United States-directed packaging, manuals, and instructions; and (e) uses an agent located in the United States.

## **VENUE**

16. Venue is proper in this District under 28 U.S.C. § 1391(c)(3), which provides that a defendant not resident in the United States may be sued in any judicial district. Heiman is a foreign corporation that does not reside in the United States. The patent venue statute, 28 U.S.C. § 1400(b), does not apply to foreign defendants. *See In re HTC Corp.*, 889 F.3d 1349, 1354–61 (Fed. Cir. 2018); *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972).

## **THE ’938 PATENT**

17. On September 8, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,769,938, entitled “Smoke Detection Method, Smoke Detection Device, Smoke Alarm and Storage Medium.” The ’938 patent issued from U.S. Application No. 16/524,706, filed July 29, 2019. The ’938 Patent claims priority to Chinese Patent Application No. 201910452375.4, filed May 28, 2019. A true and correct copy of the ’938 Patent can be found at https://patentimages.storage.googleapis.com/65/4c/d2/3451e45bd03d26/US10769938.pdf.

18. The named inventors of the ’938 Patent, Dongfang Chen, Xingxing Huang, and Qingqin Shi, assigned their rights to Siterwell Electronics Co., Limited of Ningbo, China, and evidenced by virtue of an assignment recorded with the U.S. Patent and Trademark Office (“USPTO”) at Reel/Frame 49889/0671. Siterwell Electronics Co., Limited assigned all its rights, title, and interest to the ’938 patent to FireAngel, evidenced by virtue of an assignment recorded with the USPTO at Reel/Frame 72384/0282. FireAngel owns and holds all rights, title and interest in the ’938 Patent, including the right to sue for and recover damages for past, present, and future infringement and to seek injunctive relief as appropriate under the law.

19. The ’938 Patent addresses a longstanding problem with smoke alarms: nuisance or false alarms triggered by non-fire aerosols, such as cooking fumes, that lead users to disable their alarms. The ’938 Patent describes a smoke alarm having two transmitters that emit signals of different wavelengths into a detection chamber and a receiver that generates electrical signals in response. In clean air, the received signals are relatively fixed; as smoke enters the chamber, the received signals increase with smoke density. Because light of different wavelengths interacts differently with particles of different sizes, a ratio between the signal increments caused by the two transmitters differs by smoke type (for example, a ratio of approximately 2 for burning newspaper and approximately 3 for steak grilling). The ’938 Patent provides a novel solution for reducing the number of nuisance or false alarms.

20. Claim 1 of the ’938 Patent recites as follows:

> 1. A smoke detection method, comprising the steps of:
>
> adjusting a current detection period of a smoke alarm to be a rapid detection period to accelerate the detection frequency of the smoke density when a current smoke density is detected to meet a set density threshold;

calculating a ratio of an electrical signal increment caused by a first transmitted signal to an electrical signal increment caused by a second transmitted signal; and

wherein received electrical signals generated by the receiver after the transmitters transmit signals increase, and the higher the smoke density, the greater the electrical signal until the electrical signal is saturated; and

increasing a smoke alarm threshold of the smoke alarm when smoke is judged not to be caused by a fire hazard based on the ratio;

wherein the wavelength of the first transmitted signal is different from that of the second transmitted signal, and different types of smoke is judged based on a ratio between the electrical signal increments caused by the two signals.

## HEIMAN'S ACCUSED PRODUCTS

21. Heiman makes, uses, offers to sell, sells, sells for importation, and/or imports into the United States smoke alarms and combination smoke and carbon monoxide detectors, including but not limited to at least the following Heiman products: the Heiman Smart Photoelectric Smoke Alarm S1-R, S1-M, and other Heiman S1-series smoke alarms (including S1-M, S1-W, S1-Z, S1-R, S1-S, AK-S1-R), including as offered for sale on Amazon.com (https://www.amazon.com/dp/B0FPG5MPPQ). The S1-R alarm is pictured below:







Heiman Smart Photoelectric Smoke Alarm S1-R

22. Upon information and belief, these products listed in the previous paragraph have a similar structure and operation in relevant respects for infringement of the ’938 patent, and are collectively referred to herein as the “Accused Products.” The Accused Products practice all the claims of the ’938 Patent, as alleged below.

23. The Accused Products are smoke detection devices that perform a smoke detection method. They include an optical smoke-sensing chamber that contains a receiver, two transmitters, a processor, and associated firmware that control detection and alarm operations.




24. The Accused Products contain a dual-emitter optical chamber with two emitters that emit light of measurably different wavelengths, i.e., a first transmitted signal having a wavelength different from that of a second transmitted signal.




25. The Accused Products include programmed microcontroller or other similar hardware that adjust a current detection period of the smoke alarm to be a rapid detection period to accelerate the detection frequency of the smoke density when a current smoke density is detected to meet a set density threshold. That is, the smoke sampling cycle shortens once smoke is detected.

On information and belief, the Accused Products implement this adjustment when the detected smoke density meets a set density threshold.



Accused Product’s hardware

26. Upon information and belief, the receiver in the Accused Products generate electrical signals from the transmitted signals, where incremental changes in the electrical signals differ based on particles of different sizes, thereby discriminating among particles of different sizes. Upon information and belief, the electrical signals are greater with higher smoke density, until signal saturation. In short, upon information and belief, and consistent with the physics of optical scattering detectors, the higher the smoke density, the greater the electrical signal, until the electrical signal is saturated.




27. On information and belief, the Accused Products calculate a ratio of an electrical signal increment caused by the first-wavelength transmitted signal, such as red signal, to the electrical signal increment caused by the second-wavelength transmitted signal, such as infrared signal.

28. The Accused Products use two emitters—one for the red signal and the other for the infrared signal—that operate at different wavelengths and use a receiver that generates electrical signals based on the signals transmitted by those emitters.

29. The Accused Products are stated to comply with UL217, 10th Edition.

- UL 217 10th Ed. Certified & Red Dot Awarded — Meets the UL 217 10th Edition safety standard – the newest and most rigorous smoke alarm requirement in North America. but it is not UL Listed or officially UL certified, and may not qualify for local COO building inspections. Its compact, purpose-built design earned the Red Dot Design Award in Germany, combining dependable protection with a clean, modern look that fits seamlessly into today's homes.

Amazon Listing Product Description; https://www.amazon.com/dp/B0G52H7YSZ




Back of S1-R Product Packaging

30. The Accused Product discriminates between fire-type smoke and non-fire aerosols and applies a higher effective alarm threshold to non-fire aerosols.




Amazon Listing Image; https://www.amazon.com/dp/B0G52H7YSZ




Product Description; https://www.heimantech.com/product/smart-smoke-fire-alarm-s1-series

31. Upon information and belief, the Accused Products perform calculations based on wavelength-dependent Mie scattering effects of particles of different diameters. Upon information and belief, those calculations involve comparing relative changes among the transmitted signals.

32. The Accused Products detect particle size to distinguish real fire smoke from non-fire sources. The Accused Products use the dual wavelengths of the transmitted signals together to distinguish fire smoke from interfering sources such as cooking fumes. The Accused Products use the dual wavelengths with detection of particle size to identify the type of smoke and reduce the false alarm rate.

33. Upon information and belief, the determination of the different types of smoke is based on the ratio.

34. Upon information and belief, the Accused Products increase the smoke alarm threshold of the smoke alarm when smoke is judged not to be caused by a fire hazard based on the ratio. The Accused Products have an increased alarm threshold of the Accused Products for a non-fire aerosol (*e.g.*, cooking nuisance smoke) relative to fire-type smoke (*e.g.*, flaming polyurethane smoke).

35. To the extent any element of claim 1 is found not to be literally present in the Accused Product, that element is present under the doctrine of equivalents. For example, to the extent the Accused Product compares the wavelength-dependent signal increments by a calculation other than an express ratio, the Accused Products are configured to carry out calculations that performs substantially the same function (distinguishing smoke types based on the relative responses at two different wavelengths), in substantially the same way (by comparing the signal increments caused by the two different-wavelength transmitted signals), to achieve substantially the same result (judging whether smoke is caused by a fire hazard and increasing the alarm threshold for non-fire smoke to reduce false alarms). Any differences are insubstantial.

36. As another example, for reasons similar to claim 1, the Accused Products practice claim 4 of the ’938 Patent. With reference to the allegations of paragraphs 23–34 above, the Accused Products include programmed microcontroller or other similar hardware that meets the recitations of “detection period adjustment unit configured to adjust a current detection period of a smoke alarm to be a rapid detection period to accelerate the detection frequency of the smoke density when a current smoke density is detected to meet a set density threshold;” “a ratio calculation unit configured to calculate a ratio of an electrical signal increment caused by a first transmitted signal to an electrical signal increment caused by a second transmitted signal;” and “an alarm threshold adjustment unit configured to increase smoke alarm threshold of the smoke alarm when smoke is judged not to be caused by a fire hazard based on the ratio.” In addition, just as outlined for claim 1 above, in the Accused Products, the “received electrical signals generated by the receiver after the transmitters transmit signals increase, and the higher the smoke density, the greater the electrical signal until the electrical signal is saturated.”

37. The Accused Products practice claims 2–3 and 5–6 of the ’938 Patent. Thus, the two emitters in the Accused Products emit red light and infrared light, respectively.

38. The Accused Products practice claims 7–9 of the ’938 Patent. For claim 7, the Accused Products are smoke alarms, and the smoke alarms include the smoke detection device of claim 4 (as outlined above). For claim 8, the Accused Products include a memory and a processor, where the memory stores programming for smoke detection, and a processor that executes the programming for carrying out the method of claim 1 (as outlined above). For claim 9, the Accused Products include a memory that stores programming that is carried out by a processor to implement the method steps of claim 1 (as outlined above).

39. To the extent any element of claims 2–9 is found not to be literally present in the Accused Product, that element is present under the doctrine of equivalents.

## HEIMAN’S KNOWLEDGE OF THE ’938 PATENT

40. Heiman has had actual knowledge of the ’938 Patent at least as of on or about May 28, 2026. On May 28, 2026, FireAngel sent Heiman a letter, by FedEx and email, to Heiman in Shenzhen, China and its agent, Lucky Cowboy Global Services, LLC. The May 28 letter provided Heiman with notice of infringement of the ’938 Patent. The May 28 letter identified the ’938 Patent and notified Heiman that at least the Heiman S1-R infringes the ’938 Patent under 35 U.S.C. § 271.

41. Despite its knowledge of the ’938 Patent and its infringement, Heiman has continued to make, use, offer to sell, sell, sell for importation, and/or import the Accused Products, and to supply them for importation into and sale in the United States. Heiman’s continued infringement after it became aware of the ’938 Patent constitutes willful infringement.

**COUNT I**
**(Infringement of U.S. Patent No. 10,769,938)**

42. FireAngel repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

43. The ’938 Patent is valid and enforceable, and fully complies with Title 35 of the U.S.C. Neither FireAngel, nor previous owner has licensed or otherwise authorized Heiman to make, use, sell, offer to sell and/or import any products falling within any claim of the ’938 Patent.

44. Heiman has directly infringed and continues to directly infringe at least claim 1 of the ’938 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing the Accused Products into the United States, without authority. On information and belief, Heiman offers to sell and sells the Accused Products to U.S. customers through Amazon.com.

45. Heiman has induced and continues to induce infringement of at least claim 1 of the ’938 Patent under 35 U.S.C. § 271(b) by actively encouraging importers, distributors, Amazon.com and Amazon.com sellers, retailers, and end users to directly infringe by importing, offering to sell, selling, and using the Accused Product in the United States. Heiman’s acts of inducement include, on information and belief: designing and manufacturing the Accused Products for the United States market; obtaining an FCC grantee code; supplying the Accused Products with U.S.-compliant labeling, English-language packaging, user manuals, and instructions directing installation and use of the Accused Product as smoke alarms in the United States (including consistent with UL 217); marketing and enabling the marketing of the Accused Product's false-alarm-reduction features; and continuing to supply the Accused Product for the United States market after receiving notice of the ’938 Patent.

46. Heiman has engaged in these acts with knowledge of the ’938 Patent since at least May 28, 2026, and with knowledge that, or willful blindness to the fact that, the induced acts constitute infringement of the ’938 Patent, and with the specific intent to cause that infringement.

47. FireAngel has been and continues to be damaged by Heiman’s infringement and is entitled to recover damages adequate to compensate for the infringement, in an amount no less than a reasonable royalty, together with interest and costs, under 35 U.S.C. § 284 and to be proved at trial.

48. Heiman’s infringement has caused and will continue to cause FireAngel irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court under 35 U.S.C. § 283.

## WILLFULNESS

49. Heiman’s infringement of the ’938 Patent has been and continues to be willful, deliberate, and intentional. Heiman has had actual knowledge of the ’938 Patent and of FireAngel’s specific infringement allegations since at least May 28, 2026. Heiman has continued to make, sell, offer to sell, and supply the Accused Product for importation into and sale in the United States, in knowing or reckless disregard of FireAngel’s patent rights.

50. Heiman’s willful infringement entitles FireAngel to enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284, and renders this an exceptional case entitling FireAngel to its reasonable attorneys’ fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, FireAngel respectfully requests that the Court enter judgment in its favor and against Heiman, and grant the following relief:

A. A judgment that Heiman has infringed the ’938 Patent, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B. An award of damages adequate to compensate FireAngel for Heiman’s infringement, in an amount no less than a reasonable royalty, under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest and costs;

C. A judgment that Heiman’s infringement has been willful and an award of enhanced damages of up to three times the damages found or assessed under 35 U.S.C. § 284;

D. A judgment that this case is exceptional and an award to FireAngel of its reasonable attorneys’ fees under 35 U.S.C. § 285;

E. A permanent injunction under 35 U.S.C. § 283 enjoining Heiman, its officers, agents, servants, employees, and all persons in active concert or participation with them, from further infringement of the ’938 Patent, or, in the alternative, an award of an ongoing royalty for any continuing infringement;

F. An accounting of all infringing sales and damages not presented at trial, including supplemental damages for any post-verdict infringement; and

G. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, FireAngel demands a trial by jury on all issues so triable.

Dated: November 16, 2026

By: */s/ Melissa R. Smith*

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

R. Spencer Montei
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: 312.832.4354
rmontei@foley.com

Pavan K. Agarwal
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, D.C. 20007
Telephone: 202.945.6162
pagarwal@foley.com

William J. Ulrich
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: 414.271.2400
will.ulrich@foley.com

*Attorneys for Plaintiff*
*FireAngel Safety Technology Limited*